ALFRED STEDMAN, BY HUBERT Q. STEDMAN, GUARDIAN AD LITEM, v. AUGUST NORLIN AND OTHERS.[1]

January 14, 1955.

No. 36,316.

*Paul J. Louisell,* for appellant.

*Rosengren & Rufer* and *Robert O. Blatti,* for respondent Baker.

*Freeman & Peterson, M. W. Gaughn,* and *Thomas J. Burke,* for respondents Norlin.

THOMAS GALLAGHER, JUSTICE.

Appeal from a judgment based upon directed verdicts for defendants in an action for damages sustained as the result of an automobile accident.

The accident happened shortly after dark on October 6, 1951, on U. S. highway No. 10 about two miles east of Staples. At the point of impact, highway No. 10 is "blacktop" surfaced. It extends easterly and westerly, approximately 28 feet in width, and is comparatively level and straight for some distance both ways. The shoulders thereof are wide and slope gradually from the edge of the blacktop. The road surface was dry at the time.

Plaintiff, Alfred Stedman, 15 years at the time of the accident, was a passenger in a 1950 Nash driven in an easterly direction by defendant Clyde E. Baker. Defendant Raymond Norlin, traveling in a westerly direction in a 1940 Chevrolet owned by his father, defendant August Norlin, approached them in the northerly lane. Attached to his car was a two-wheeled trailer upon which was tied a 14-foot metal fishing boat. Both the Baker and Norlin cars had their lights on.

Between these two cars as they approached each other, a hayrack pulled by a team of horses driven by one George F. Jungles, since deceased, was traveling in an easterly direction in front of the Baker car. It occupied part of the southerly lane and shoulder. Two glass reflectors were mounted on the rear thereof, and a red flag was carried at its rear left corner. A couple of "armloads" of hay were in the hayrack at the time.

As he approached the Baker car and when it was still 3/4 of a mile distant, Norlin dimmed his headlamps. Baker upon observance of the Norlin car dimmed his headlamps while 1/2 to 3/4 of a mile from it. No vehicles other than those described were on the highway at the time. Baker testified that he was not aware of the hayrack traveling in front of him until he was some 40 to 50 feet to its rear, while Norlin testified that he did not observe it until it was outlined in the headlights of the Baker car while he was still some 50 feet east of it.

When Baker first saw the hayrack, he endeavored to turn his car to the left and pass between it and the Norlin car. Immediately upon observing the Baker car coming at him, Norlin applied his brakes and turned his car to the right so that part of it was on the north shoulder of the highway. Baker's car grazed the left side of the hayrack, then struck the left side of the Norlin car near its rear, and thereafter collided with the trailer attached thereto. He testified that he did not apply his brakes until just a few feet before the collision; that he "barely got started to brake" before it occurred; that his car was then about two feet to the left of the center line of the highway. The Norlin car and trailer were by that time partially in the north lane with the car's right wheels about three feet over on the north shoulder.

Plaintiff had been sleeping but awakened a moment before the impact, which resulted in the injuries for which this action was instituted through his father, Hubert Q. Stedman, as guardian *ad litem*. The driver of the hayrack, George Jungles, was not made a party to the action, but his deposition was submitted in the course of the trial.

At the close of all the evidence, the court granted defendants' motions for directed verdicts on the grounds that no negligence had been established against defendants or either of them. On appeal plaintiff contends that Baker's failure to keep a reasonably careful lookout, and to comply with M. S. A. 169.18, subd. 3(1), and with 169.18, subd. 5(a), which relate to overtaking and passing vehicles on the highway; and Norlin's failure to "look and *see*" in time to control his car, as well as evidence that the boat attached to his trailer may have crossed the center line just prior to the impact, created jury issues on the question of their negligence. Errors asserted with reference to rulings on evidence submitted must also be considered.

■ We believe the court was correct in directing a verdict in favor of defendant Norlin. There is no evidence that his car was not on the proper side of the highway or traveling at an unlawful rate of speed; or that he was otherwise operating it in an unlawful manner.

He had the right to assume, until the contrary appeared, that vehicles using the highway and approaching him from the opposite direction would remain in their proper lane. Nash v. Christenson, 241 Minn. 164, 62 N. W. (2d) 800. When he first discovered that Baker was leaving the south lane, in an attempt to avoid the collision he immediately applied his brakes and turned to the right until his car was some three feet over onto the north shoulder. Although this proved futile, we do not think he could reasonably have been expected to do anything further under the circumstances. As stated in Nash v. Christenson, *supra,* "Reasonable persons, viewing the evidence * * *, could not find that plaintiff had a duty to do anything but this."

■ It is claimed there is evidence that the boat which was attached to the top of the Norlin trailer may have extended over into the south lane of the highway after Norlin started to make his turn. There is no positive evidence to such effect. Norlin testified that, as he traveled along prior to the accident, his left wheels were two feet north of the center line; that he turned to the right to avoid the impact to the extent that his right wheels were about three feet to the right of the north edge of the "blacktop" when it occurred; that his trailer was a "true running trailer," and to his knowledge had not jerked toward the left after he started to turn to the right; and that Baker's car first came in contact with the left rear of his car before it struck the trailer.

Baker testified that, at the time of contact, his car was over in the north lane a "couple of feet"; that probably no part of Norlin's car or trailer extended into the south lane. He testified further that: "* * * there probably wasn't any of it [the trailer] over [into the southerly side of the highway]. There probably was the end of the boat, but I hit the trailer, not the boat." No further evidence was submitted on this question.

Obviously, in the absence of testimony as to the proximity of the left trailer wheels to the center line, the foregoing would be insufficient to support a finding that any part of either Norlin's car, trailer, or boat had at any time extended over into the south lane

of the highway. No other claim of negligence on the part of Norlin was advanced, and accordingly, we conclude the trial court properly directed a verdict in his favor.

■ We feel there is ample evidence to support a finding that Baker was negligent. He testified that at the time of the accident his headlamps were on "low beam" and that they were in "good condition" and in "good working order." He testified further that the highway was dry, the weather clear, and the road straight and fairly level at the point of impact with nothing thereon to interfere with or obstruct his view. It is not disputed that part of the hayrack was on the south shoulder of the highway and that the rear thereof was equipped with reflectors in compliance with § 169.55; that no cars other than Baker's and Norlin's were in the vicnity; that the "blacktop" was some 28 feet in width; and that Norlin had dimmed his headlamps while Baker was still substantially to the rear of the hayrack. Notwithstanding the presence of such factors, Baker by his admission did not see the hayrack until he was 40 to 50 feet from it.

Section 169.60 (3) provides: "All road lighting beams shall be so aimed and of sufficient intensity to reveal a person or vehicle at a distance of at least 100 feet ahead." While it may be argued here that the oncoming car or the other conditions described constituted distracting circumstances, the presence of such factors ordinarily does not as a matter of law absolve a motorist from negligence. Johnson v. Kutches, 205 Minn. 383, 285 N. W. 881; Twa v. Northland Greyhound Lines, Inc. 201 Minn. 234, 275 N. W. 846; Olson v. Purity Baking Co. 185 Minn. 571, 242 N. W. 283; Wicker v. North States Const. Co. Inc. 183 Minn. 79, 235 N. W. 630; Mechler v. McMahon, 180 Minn. 252, 230 N. W. 776; Forster v. Consumers Wholesale Supply Co. 174 Minn. 105, 218 N. W. 249; Jacobs v. Belland, 171 Minn. 338, 214 N. W. 55.

Here we cannot escape the conclusion that, if Baker's headlamps were in proper working condition as he testified, the facts outlined would adequately support a finding that at the time of the accident either he was not keeping a proper lookout, or that his car was being

operated in a manner that did not permit his proper control thereof. The determination of such issues should not have been withdrawn from the jury.

■ Likewise, the evidence appears sufficient to support a finding that Baker's actions constituted a violation of the provisions of § 169.18, subd. 5(a), and § 169.18, subd. 3(1). The former specifies that motorists in passing vehicles proceeding in the same direction shall not drive to the left of the center line where such a move would interfere with the safe operation of an approaching vehicle; the latter requires a motorist, overtaking and passing another traveling in the same direction, to pass at a safe distance to the left thereof. Section 169.96 makes violation of either of such provisions prima facie evidence of negligence. As set forth above, Baker admitted that, while in the north lane, he struck the left side of the hayrack in passing it, and thereafter collided with the left sides of the Norlin car and trailer. Clearly, such admissions might establish that, in overtaking and passing the hayrack, he did not do so at a "safe distance" to the left or without interfering with "the safe operation" of the Norlin car approaching from the opposite direction. Even if it be asserted that Baker's actions were occasioned by an emergency, this would not eliminate the jury's function of determining whether there was such an emergency, and if so, whether it was of Baker's own making. Clearly, it was within the province of the jury to determine whether the statutory violations constituted negligence proximately causing the accident. Knudson v. Nagel, 238 Minn. 186, 56 N. W. (2d) 420; Olson v. Olson, 238 Minn. 102, 55 N. W. (2d) 706; Demmer v. Grunke, 230 Minn. 188, 42 N. W. (2d) 1.

■ The deposition of George Jungles, driver of the hayrack, was submitted. Therein, he was asked to give his estimate of the speed of the Baker car just prior to the accident. This was objected to for lack of foundation and the objection sustained. The foundation, from which the opinion was sought, established that the witness had driven automobiles for a number of years and was generally familiar with their various rates of speed; that he knew the Baker car was approaching from his rear and had watched it for a full mile as it

approached and collided with his hayrack; that it was traveling "faster than the average car on the highway"; that "it sounded like a young airplane coming"; and that he had formed an opinion as to its speed. However, when asked to give his estimate of its speed in miles per hour, he replied: "I would hate to estimate that." Thereafter, the court sustained objections to further questions as to his estimate in miles per hour of the speed of the Baker car on the ground above specified.

Determination of the sufficiency of the foundation for opinion evidence ordinarily rests within the discretion of the trial court. Hatley v. Klingsheim, 236 Minn. 370, 53 N. W. (2d) 123; see, 7 Dunnell, Dig. (3 ed.) § 3322a. While the fact that the Baker car was approaching from the rear would not seem to constitute a bar to the witness's expression of his opinion as to its speed (see, Aasen v. Aasen, 228 Minn. 1, 36 N. W. [2d] 27; Hayden v. Lundgren, 175 Minn. 449, 221 N. W. 715), his own doubt as to his qualification to estimate such speed in miles per hour would indicate the trial court had not abused its discretion in rejecting his further expressions of opinion with reference thereto. See, Marsh v. Henriksen, 213 Minn. 500, 7 N. W. (2d) 387; City of Grand Rapids v. Crocker, 219 Mich. 178, 189 N. W. 221.

Judgment reversed and new trial ordered as to defendant Clyde E. Baker; affirmed as to defendants August Norlin and Raymond Norlin.

MR. CHIEF JUSTICE DELL took no part in the consideration or decision of this case.