## T. B. HATLEY v. PAUL KLINGSHEIM AND OTHERS. MRS. T. B. HATLEY v. SAME.[1]

April 18, 1952.

Nos. 35,671, 35,672.

[1]Reported in 53 N. W. (2d) 123.

*Plunkett & Plunkett,* for appellants.

*G. P. Mahoney* and *Mahoney, Cragg & Barnett,* for respondents Marvin A. Berg and Rochester Dairy Co-operative.

*Ira C. Peterson, Jr.,* and *Freeman, King, Larson & Peterson,* for respondent Paul Klingsheim.

KNUTSON, JUSTICE.

Appeals from orders denying plaintiffs' motions for a new trial.

Plaintiff Mrs. T. B. Hatley was seriously injured in a collision between an automobile owned by her husband, T. B. Hatley, and driven by her, and a truck owned by defendant Rochester Dairy Co-operative and driven by its employe, defendant Marvin A. Berg.

Actions were commenced by Mrs. Hatley to recover for her personal injuries and by Mr. Hatley to recover for medical and hospital expenses for his wife, loss of comfort and companionship, and damages to his automobile. The cases were consolidated for trial, and separate appeals have been heard together here.

The collision occurred on September 29, 1950, about 6:15 p. m., on trunk highway No. 63 at a point about 16 miles south of the city of Rochester. It had been raining enough on the day involved so that the tarvia pavement was damp and wet. Sunset on that day was fixed at 6:52 p. m., but visibility was restricted enough at the time of the accident so that all cars were driving with lights on.

South of the point of the collision the highway is comparatively level for about half a mile. Beginning at the point of impact, the highway running to the north begins a gradual incline, reaching a crest about three-tenths of a mile north of that point and then descending northerly more rapidly after the crest is passed. Defendant Berg entered highway No. 63 from U. S. highway No. 16, which forms a Y about two miles south of the point of the collision. He was driving a tractor-trailer milk truck weighing about 45,000 pounds. The over-all length of the tractor and trailer was slightly less than 45 feet. At its widest point, the outfit was about seven feet wide. After entering highway No. 63, Berg traveled north at the rate of about 40 to 45 miles per hour. No one disputes that he was at all times on his side of the highway.

Defendant Paul Klingsheim was also driving north on highway No. 63 in his Nash automobile. He caught up to the creamery truck about a mile south of the place where the collision took place and followed it for some distance until he thought it was safe to pass. He then pulled up alongside the trailer, intending to pass it. At that time, Mrs. Hatley was approaching the crest of the hill from the opposite direction. Klingsheim testified that when he had pulled up alongside the truck he observed the lights of a car flash over the crest of the hill and that he tried to drop back of the truck, but that the car was coming so fast he thought he could not make it, so he "took the left shoulder" and applied his brakes. He estimated

that the car coming from the north was about 1,500 feet away when he began to drop back. He estimated the speed of the Hatley car at 65 to 70 miles per hour as it came over the crest of the hill. The creamery truck, in the meantime, was proceeding north on its own side of the highway. The Hatley car approached the truck and, when about 40 feet north of it, swung sharply to the left and crossed in front of the truck. The truck and car collided. The Klingsheim car came to a stop about 300 feet south of the point of impact on the west shoulder of the road.

Mrs. Hatley did not remember what happened. Mrs. C. W. Zittleman, who was riding with her, testified that when they came over the crest of the hill she saw the lights of the truck about three or four blocks away and that when the Hatley car was about two and one-half blocks away the Klingsheim car pulled out to pass the truck; that Mrs. Hatley then turned to her right so that her wheels were on the west shoulder; that the Klingsheim car was seen to turn out on the west shoulder; that Mrs. Hatley then tried to get back on the pavement; that on account of the ridge formed by the tarvia and the damp pavement she swerved suddenly to her left; and that the accident then occurred. She estimated that the Hatley car was about 50 feet from the two approaching vehicles when Mrs. Hatley tried to get back onto the pavement. Mrs. Zittleman was unconscious after the collision and did not know where the Klingsheim car was after the accident. With respect to speed, Mrs. Zittleman testified that Mrs. Hatley was going "close to 50" when they reached the top of the hill. She further stated that the truck and the automobile traveled side by side for about one and one-half blocks, during which time Mrs. Hatley kept driving at about the same speed.

The jury returned verdicts for all the defendants in Mrs. Hatley's case. In Mr. Hatley's case, it returned a verdict of $808.50 for plaintiff against defendant Klingsheim. Plaintiffs moved for a new trial in both cases. The court denied the motion in Mrs. Hatley's case, but granted a new trial on the question of damages to Mr. Hatley's automobile unless defendant would consent that the ver-

dict be increased by additur to the sum of $1,400. Defendant declined to consent, so the case stands for a new trial on the question of damages to Mr. Hatley's automobile in his case. Appeals were taken in each case purporting to be from an order of the court "denying the motion of the plaintiff for judgment notwithstanding the verdict of the jury in said action, and denying the motion of the plaintiff for a new trial." There is neither any motion for a directed verdict, which is a prerequisite to a motion for a judgment notwithstanding the verdict (Wilcox v. Schloner, 222 Minn. 45, 23 N. W. [2d] 19; 3 Dunnell, Dig. & Supp. § 5079), nor is there any motion for judgment notwithstanding the verdict, so we consider the appeals only from the orders denying motions for a new trial.

■ It is the contention of plaintiffs that the proximate cause of the accident was Klingsheim's negligence in pulling out to the left or west shoulder, and that Mrs. Hatley was guilty of no actionable negligence; hence, that the court erred in failing to instruct the jury as a matter of law that Klingsheim's negligence was the proximate cause of the accident and in submitting to the jury the question of Mrs. Hatley's contributory negligence. At the outset, it must be mentioned that there was no request for a directed verdict by plaintiffs, no request to withdraw from the jury the question of Mrs. Hatley's contributory negligence, nor were any exceptions to the court's charge noted by plaintiff in either case. At the close of the court's charge, plaintiffs did request that the court charge the jury in accordance with Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 10 N. W. (2d) 406, 147 A. L. R. 945, respecting the right of Mr. Hatley to recover for damages to his automobile, even though the jury should find that Mrs. Hatley was guilty of contributory negligence. The court accordingly gave such instruction. It is obvious from the fact that a verdict was returned for Mr. Hatley but not for his wife that the jury found Klingsheim guilty of negligence and Mrs. Hatley guilty of contributory negligence, and that, applying the rule of the Christensen case, it returned a verdict for Mr. Hatley for what it considered to be the damages to his car. The jury absolved defendants Berg and the

Rochester Dairy Co-operative of any responsibility, and there seems to be no quarrel with that part of the decision here. It would be difficult to see how any other verdict against these two defendants could stand on the record now before us.

In considering the question whether Mrs. Hatley was free from contributory negligence as a matter of law, the evidence most favorable to the prevailing parties must be accepted. Defendant Berg testified that when the Hatley car came over the crest of the hill he was some five blocks or 1,500 feet south. According to Klingsheim, he was at that time alongside the truck, attempting to pass it. Berg testified that he did not notice anything unusual about the Hatley car, but continued to approach it until, all of a sudden, it shot across the road directly in front of him. Klingsheim testified that the Hatley car came over the crest of the hill at an excessive speed, which he estimated to be 65 to 70 miles per hour. It is the contention of plaintiffs that Klingsheim's testimony was impeached by an inconsistent written statement, given by him shortly after the accident, in which he stated that he could not estimate the speed of the Hatley car when it came over the hill. The weight to be given to his testimony and the credibility of it were for the jury. Whether his explanation of the reasons for the apparent discrepancies in his testimony and his prior written statement was entitled to belief was likewise a question for the jury to determine.

Klingsheim's testimony that the Hatley car came over the hill at an excessive speed is corroborated to some extent by the testimony of Vernon Ridgeway, a witness called by Klingsheim, who said that a short time before the accident he was traveling south on highway No. 63 and that a car of the same color and description as the Hatley car passed him a short distance before he reached the crest of the hill. He thought that the Hatley car, which he came upon shortly after the accident, was the one that had passed him. He testified that this car was traveling about 60 miles an hour. The skid marks showed that the Hatley car left the tarvia with its right wheels and skidded some 74 feet while so traveling.

These marks also showed that the Hatley car, apparently in attempting to get back onto the tarvia, which was about two and one-half or three inches higher than the adjoining shoulder, traveled abruptly across the pavement. It is undisputed that the Hatley car was struck on its right side by the front end of the truck. Klingsheim's testimony that he stopped some 300 feet south of the point of impact on the west shoulder of the road stands undisputed.

Plaintiffs contend that, even if Mrs. Hatley was traveling 60 miles per hour, she was within the statutory speed limit. While under our statute (M. S. A. 169.14) speeds up to 60 miles per hour are permissible under normal driving conditions, the statute does not render one free from negligence as a matter of law when not exceeding that speed if weather conditions or special hazards exist which make it improper or unreasonable to drive at that speed. The degree of care required, which involves speed as well as other elements of care, must be commensurate with the conditions which exist at that time; and whether such care has been exercised is ordinarily a question of fact for the jury. Here, even though the accident occurred prior to sundown, visibility was restricted to such an extent that all cars were driving with lights on. The pavement was wet. Mrs. Hatley was approaching the crest of a hill, and her view of the other side was cut off. After she reached the crest of the hill and observed the two vehicles approaching, there was considerable distance in which to slow up or stop. Even after she lost control of her car and careened across the highway, Klingsheim was some 300 feet away. Under these circumstances, it was for the jury to say whether Mrs. Hatley was guilty of contributory negligence.

■ Plaintiffs next contend that it was error to permit Klingsheim to testify to the speed of the Hatley car as it came over the hill and as it approached him. Ordinarily, "Any person of reasonable intelligence and ordinary experience in life may, without proof of further qualification, express an opinion as to how fast an automobile or other moving object which has come under his

observation was going at a particular time." Daly v. Curry, 128 Minn. 449, 451, 151 N. W. 274.

It is a matter of common knowledge that it is difficult to estimate the speed of an approaching automobile, especially at night, but the weight to be given to the estimate deals rather with its probative value than with its admissibility. The sufficiency of the foundation establishing opportunity for observation rests largely in the discretion of the trial court. We believe that it was proper to admit the testimony. See, Humphries v. Complete Auto Transit, Inc. 305 Mich. 188, 9 N. W. (2d) 55.

◼ Our holding that the evidence will sustain a finding of contributory negligence on the part of Mrs. Hatley disposes of the contention of Mr. Hatley that a new trial on the question of damages should not have been limited to that of damages to his automobile. He has been granted a new trial on the issue of damages to his automobile; and, even if it were error to grant such new trial conditional upon defendant's failure to consent to an additur, such error would now be without prejudice, for the reason that defendant has not filed such consent, so the case now stands the same as if no such additur were involved. The same is true of the claim that the court erred in failing to instruct the jury that if it returned a verdict for Mr. Hatley it must find in the full amount of damages proved. Insofar as he is concerned, in view of the finding of contributory negligence on the part of Mrs. Hatley, which bars his right to recover for medical expenses and all other elements of damages involved in his case except damages to his automobile, he has received all that he would be entitled to under any circumstances.

◼ Finally, plaintiffs contend that the verdict in Mr. Hatley's case is so inadequate that it demonstrates that the jury's verdict in both cases was the result of passion and prejudice. Plaintiffs' claim of passion and prejudice is predicated mainly on the fact that the court permitted defendant Klingsheim to show that shortly before the trial Mr. and Mrs. Hatley had been in another accident on their way back from Texas. The evidence now complained of

was admitted without objection. All parties, including plaintiffs, went into the matter, once it was brought up. We cannot see how it could have been prejudicial; in any event, it is too late now to raise it for the first time.

Affirmed.